

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

December 5, 1966

Mr. Ben Ramsey, Chairman    Opinion No. C-784
Railroad Commission of Texas
Austin, Texas                Re:  Applicability of Utility
                                  Tax under Article 6060,
                                  V.C.S., concerning certain
                                  sales of the Shamrock Oil
Dear Mr. Ramsey:              & Gas Corporation.

You have requested this office to construe Article 6060, Vernon's Civil Statutes, to determine its application to certain sales of Shamrock Oil and Gas Corporation. Shamrock Oil and Gas Corporation produces oil and gas, operates a refinery and gasoline plant in Moore County, Texas, and markets refined products. Natural gas is gathered from approximately 450 wells from an extensive gathering system and processed at the Moore County, Texas, plant. You state in your opinion request that the Railroad Commission has never attempted to collect the tax imposed by Article 6060 on sales made at or prior to the tailgate of the gasoline plant or on sales made in interstate commerce.

You further state in your request that Shamrock makes five certain sales not at the tailgate of the plant but at a distance varying from one and one-half miles from the plant up to 49 miles from the tailgate of the plant. In order to serve these markets, it was necessary for Shamrock to build pipelines which cross various State highways or farm roads. In your opinion request you gave this office five instances of sales by Shamrock and asked us to determine whether the sales are exempt from the gross receipts tax imposed by Article 6060.

The five illustrations were as follows:

1. To Southwestern Public Service Company for use as fuel in its Moore County Plant. The line used in connection with this sale is owned by Shamrock and is crossed by a road which runs a short distance from Farm Road 119 to Continental Carbon Company's carbon black plant. This line is approximately 1-1/2 miles long. The pipeline, although crossed by a road, was put in before the road right of way was established.

-3760-

2. To Continental Carbon Company for use in its carbon black plant. The line used in connection with this sale is owned by Shamrock and is crossed by the above-mentioned road running from Farm Road 119 to Continental's plant. This line is approximately 2 miles long.

3. To American Zinc Company for use as fuel in its smelter. The line used in connection with this sale is owned by Shamrock and is crossed by Farm Road 119. This line is approximately 3-1/2 miles long.

4. To Western Gas Service Company for its own use and for resale to others. The Shamrock line used in connection with this sale is crossed by Farm Road 119 and is approximately 3 miles long.

5. To Southwestern Public Service Company as fuel for its Nichols Plant in Potter County, Texas. This line, approximately 49 miles in length, is owned by Shamrock and is crossed by several public roads.

Article 6060 places a tax on one of the three types of gas utilities described in Article 6050, Vernon's Civil Statutes. The classification of gas utilities set out in Article 6050 describes three general categories, being persons, companies and corporations engaged in "one or more of the following kinds of business":

> "1. Producing or obtaining, transporting, conveying, distributing or delivering natural gas: (a) for public use or service for compensation; (b) for sale to municipalities or persons or companies, in those cases referred to in Paragraph 3 hereof, engaged in distributing or selling natural gas to the public; (c) for sale or delivery of natural gas to any person or firm or corporation operating under franchise or a contract with any municipality or other legal subdivision of this State; or (d) for sale or delivery of natural gas to the public for domestic or other use.

> "2. Owning or operating or managing a pipeline for the transportation or carriage of natural gas, whether for public hire or not, if any part of the right of way for said line has been acquired, or may hereafter be acquired by the exercise of the right of eminent domain; or if said line or any part thereof is laid

upon, over or under any public road or highway of this State, or street or alley of any municipality, or the right of way of any railroad or other public utility; including also any natural gas utility authorized by law to exercise the right of eminent domain.

"3. Producing or purchasing natural gas or transporting or causing the same to be transported by pipelines to or near the limits of any municipality in which said gas is received and distributed or sold to the public by another public utility or by said municipality, in all cases where such business is in fact the only or practically exclusive agency of supply of natural gas to such utility or municipality, is hereby declared to be virtual monopoly and a business and calling affected with a public interest, and the said business and property employed therein within this State shall be subject to the provisions of this law and to the jurisdiction and regulation of the Commission as a gas utility."

In 1931 the Legislature, however, limited the applicability of the tax by enactment of Section 10, Chapter 73, Acts 42nd Legislature, which provided as follows:

"That Article 6060 of the Revised Civil Statutes of 1925, except insofar as it imposes a license fee or tax of one-fourth of one per cent against persons owning, operating or managing pipe lines, as provided in Section 2 of Article 6050, is hereby repealed and said fund shall be used for enforcing the provisions of Articles 6050 to 6066, inclusive."

In construing the 1931 statute, the court said in Thompson v. United Gas Corp., 190 S.W.2d 504 (Tex.Civ.App. 1945, error ref.):

". . . The gas utility described in each of Sections 1, 2 and 3 of Art. 6050 has the right of eminent domain, and each necessarily carries on its utility business by the use of pipe lines. The Legislature, however, in regulating and controlling all such utilities had theretofore classified them into three classifications in accordance with the

> character of business done by each group.
> These groups generally represent three
> businesses, namely, production, transporta-
> tion, and distribution and sale of gas.
> Before the repeal of a portion of Art. 6060
> the Legislature had imposed the tax upon
> 'every gas utility' described in all three
> classifications. By the repealing Act it
> continued to impose the tax only upon the
> gas utility described in Section 2 of Art.
> 6050. Thus it definitely and clearly imposed
> the tax upon the gas utility described as
> being persons engaged in 'owning or operating
> or managing a pipe line for the transportation
> or carriage of natural gas, whether for public
> hire or not, if any part of the right of way
> for said line has been acquired. . .by the ex-
> ercise of the right of eminent domain. . .'
> The distinguishing feature of this section,
> however, is that the business is a pipe line
> for transportation or carriage of natural gas
> by pipe line, and the repealing Act continued
> to impose the tax upon it only."

In view of the Thompson v. United Gas Corp. case, the gas utility tax provided in Article 6060 only applies to those gas utilities described in Section 2 of Article 6050.

The basic question to be determined is whether part of Shamrock's operations can be classified as falling within Section 2 of Article 6050 since primarily Shamrock is a producer and would come within that part of the Act that was repealed in 1931. Of course, an operator might well be engaged in more than one of the three types of businesses described in Article 6050.

Prior Attorney General opinions have held that a gas producer was exempt from the tax even though it was engaged in the business of producing gas and was operating a gas gathering system for its own gas. O-3524-A; WW-625.

However, those opinions can be distinguished from the questions here presented. As stated in your opinion request, there is no attempt to collect any tax on the gathering of gas from approximately 450 wells by means of a gathering system which undoubtedly crosses under many public roads.

All the gas gathered is processed for the removal of liquid hydrocarbons and the sweetening of sour gas at the

Shamrock gasoline plant. Once the gas goes into the Moore plant, the producing and gathering of gas comes to a definite stopping place and gas leaving the tailgate of the plant is "processed" gas or "treated" gas and thus must be "transported by pipeline" to markets. It is the general and accepted practice in the gas industry that contracts usually require "takes" from the tailgate of gasoline plants. A producer that operates a pipeline to transport his "processed" gas from his gasoline plant to markets should not be classified as a producer of gas, but must fall within Section 2 of Article 6050 and is therefore "operating or managing a pipeline for the transportation or carriage of natural gas."

Therefore, it is the opinion of this office that gas transported by pipeline from the tailgate of the Shamrock gasoline plant to markets is subject to the tax imposed by Article 6060, "if any part of the pipe line is laid upon, over or under any public road. . ."

In the five sales of gas by Shamrock only the gas sold to Southwestern Public Service Company (Question Number 1) would be exempt since the pipeline was built before the road was established. The utility tax is therefore applicable to the other four sales by Shamrock.

### SUMMARY

A gas producer that transports gas from the tailgate of a gasoline plant by means of a pipeline that is crossed by a public road is subject to the utility tax imposed by Article 6060, V.C.S.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By LINWARD SHIVERS
Assistant Attorney General

LS:bp

Mr. Ben Ramsey, Page 6 (C-784)

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. Arthur Sandlin
Jim Broadhurst
Milton Richardson
Paul Phy

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright